**MICHIGAN MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Wayne Davis SMOOT, Sr., Debbie Smoot, Ronald M. Cohen, Esquire, Ronald M. Cohen & Associates, P.C., Robert R. Michael, Esquire, and Shadoan & Michael, LLP, Defendants.**

No. Civ.A. 00–1026–A.

United States District Court,
E.D. Virginia.

Dec. 22, 2000.

---

Henry Cannon Spalding, III, Sands, Anderson, Marks & Miller, Richmond, VA, for Plaintiff.

Christopher P. Schewe, Alexandria, Virginia, Thomas Leo Appler, Crews & Hancock, Fairfax, VA, Matthew William Lee, Eccleston and Wolf, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

THIS MATTER is before the Court on Defendants Ronald M. Cohen, Esquire and Ronald M. Cohen & Associates, P.C.'s Motion to Dismiss, and on Defendants Robert R. Michael, Esquire and Shadoan & Michael, LLP's Motion to Dismiss. For the reasons stated below, the Court grants the Defendants' motions to dismiss in their entirety.

The issue presented is whether, in the absence of an agreement, an attorney for a worker/claimant in a personal injury action is required by the Workers' Compensation Act to represent the workers' compensation carrier and collect funds previously paid by the carrier to the worker. In this case, a worker was injured in an automobile accident while he was performing duties in the course of his work as a tow truck driver. The worker filed a claim for workers' compensation, and Michigan Mutual Insurance Company, the employer's insurance carrier, paid him benefits. The worker later hired attorneys to pursue his claim against the third-party tortfeasor. The workers' compensation carrier was aware of the pending lawsuit, but did not assert its statutory subrogation rights within the worker's lawsuit. The worker's attorneys settled the lawsuit and secured a financial settlement. Legal fees and costs were paid to the attorneys, and the remainder of the settlement proceeds were disbursed to the worker.

The worker's compensation carrier has brought this suit against the worker and the attorneys, seeking to recover from them the full amount of benefits paid to the worker for workers' compensation benefits. The workers' compensation carrier's claim is essentially that the Workers' Compensation Act affords the carrier a self executing "lien" against the worker's proceeds from the lawsuit, and that the worker and the worker's attorneys are required to collect the amount of the workers' compensation benefits for the carrier from the proceeds of any recovery.

The attorneys assert that the Workers' Compensation Act affords a workers' compensation carrier certain statutory rights to subrogate itself for the worker in a lawsuit, as well as the right to intervene in any pending lawsuit and to assert a claim. The attorneys dispute the workers' compensation carrier's contention that these rights amount to a "lien" for reimbursement. In this case, the attorneys contend that, because the carrier did not assert its

rights or contract with the attorneys, the attorneys are not liable to reimburse the carrier the amount of the workers' compensation benefits. Moreover, the attorneys assert that, under Virginia law, the workers' compensation carrier does not have a cause of action; neither statutory nor common law provides for reimbursement of paid benefits from a worker's attorney. Rather, the Supreme Court of Virginia has ruled that where a worker settles a third-party tort claim without the consent of the workers' compensation carrier, then the carrier may withhold from the worker payment of any future claims for benefits.

Upon consideration of the Virginia Workers' Compensation Act and the common law of Virginia, the Court holds that where the workers' compensation carrier does not assert its statutory rights in a pending tort proceeding, and it does not contract with the worker's attorneys to represent the carrier in connection with the collection of benefits, the attorneys are not obligated under the Act to represent the carrier in the tort proceeding, and are not liable to reimburse the carrier for compensation paid to the worker.

## I. FACTS

Defendant Wayne Davis Smoot ("the Worker") was an employee of Henry's Wrecker Service Company ("Wrecker Service"). Defendant Debbie Smoot ("wife") is the Worker's wife. Plaintiff Michigan Mutual Insurance Company ("Workers' Compensation Carrier" or "Carrier") is the Wrecker Service's workers' compensation insurance provider.

The Worker was injured in a motor vehicle accident on March 6, 1995 during the course of his employment. He applied for and received workers' compensation in the amount of $162,587.57 from the Plaintiff Workers' Compensation Carrier. The Worker and his wife subsequently sued the other driver involved in the accident in federal court. Defendant Ronald M. Cohen, Esquire, Defendant Ronald M. Cohen

& Associates, P.C. (Defendant Cohen's firm), Defendant Robert R. Michael, Esquire, and Defendant Shadoan & Michael, LLP (Defendant Michael's firm) (collectively "Attorneys") represented the Smoots in the third-party action. The Carrier notified the Attorneys that the Carrier asserted a "lien" in the amount of the workers' compensation award. However, the Carrier did not intervene or assert any of its rights in the third-party action. Without the Carrier's knowledge or consent, the parties settled the third-party action on June 22, 1998 for $500,000.00.

The third party's insurer issued a check payable to the Smoots, Shadoan & Michael, and Robert R. Michael. Defendant Michael deducted the attorneys' fees and costs from the settlement and disbursed the remainder. The Smoots received $326,672.49, and the Attorneys received $166,666.66 in attorneys' fees and $6,660.85 for the reimbursement of expenses. The Carrier filed a petition with the Virginia Workers' Compensation Commission to terminate the Worker's compensation benefits, and sought a ruling to compel the Worker and/or his Attorneys to reimburse the Carrier for compensation paid to the Worker. The Commission terminated the Worker's future benefits, because the Worker had settled his tort action without the Carrier's consent. The Commission ruled that it did not have jurisdiction to order the Worker or his attorneys to reimburse the Carrier the compensation benefits.

## II.  PLAINTIFF'S CLAIMS

The Attorneys have refused the Carrier's requests to reimburse the Carrier the amount of the workers' compensation award. The Carrier sues the Attorneys for conversion (Count I), all Defendants for negligent breach of their duty to protect the alleged workers' compensation lien (Count IV), all Defendants for violation of

Virginia's Workers' Compensation Act (Count V), all Defendants for conspiracy to injure the Carrier's trade and business (Count VI), and the Attorneys for tortious interference with the employment contract between the Worker and the Wrecker Service (Count VII).[1] Defendants Ronald M. Cohen and Ronald M. Cohen & Associates, P.C. jointly filed a Motion to Dismiss; and Defendants Robert R. Michael and Shadoan & Michael, LLP jointly filed a Motion to Dismiss.

## III.  ANALYSIS

### Standard of Review

The Court reviews the facts underlying a Rule 12(b)(6) motion and accepts the Complaint's factual allegations as true. See *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). The Court considers the Complaint and its allegations in the light most favorable to the non-moving party. See *id.* The Court shall not grant a motion to dismiss for failure to state a claim unless it appears to a certainty that the plaintiff cannot prove any set of facts in support of its claim which would entitle the plaintiff to relief. See *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Analysis of the Counts of the Complaint

The Court grants the Attorneys' motions to dismiss in their entirety. As a preliminary matter, the Carrier's claims against the Attorneys are based on the Carrier's misapprehension of a workers' compensation carrier's rights under the Workers' Compensation Act ("Act"). Sections 65.2–309 and 65.2–310 of the Virginia Code give the Carrier certain rights that are derivative of the Worker's rights. See VA.CODE §§ 65.2–309, –310 (1995). The Act grants the Carrier the right of subrogation. Subrogation grants a right to the Carrier to assert the Worker's tort claim against the tortfeasor. See *id.* § 65.2–309. Subrogation

---

1.  The Carrier also sues the Worker for breach of his employment contract (Count II), and the Worker and his wife for unjust enrichment (Count III).

is not self-executing under the Act; an act of intervention is necessary.

■ In this case, to assert its statutory rights, the Carrier could have brought a lawsuit against the third-party tortfeasor in the Carrier's own name or in the Worker's name (e.g., file a third-party lawsuit). *See id.* Alternatively, the Carrier could have permitted the Worker to institute a lawsuit, then the Carrier could have intervened prior to the verdict or settlement and moved the Court to order the third-party tortfeasor to reimburse the Carrier for the benefits the carrier has already paid the Worker, minus the Carrier's pro rata share of the Worker's attorneys fees. *See id.* §§ 65.2–310, –313. These options are set forth explicitly in the Act:

A claim against an employer under this title for injury or death benefits shall operate as an assignment to the employer of any right to recover damages which the injured employee, his personal representative or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party.

VA.CODE § 65.2–309

In any action by an employee, his personal representative or other person against any person other than the employer, *the court shall, on petition or motion of the employer* at any time *prior to verdict,* ascertain the amount of compensation paid and expenses ... incurred by the employer under the provisions of this title and deduct therefrom a proportionate share of such amounts as are paid by the carrier for reasonable expenses and attorney's fees as provided in § 65.2–311; and in the event of judgment against such person other than the employer, *the court shall in its order*

*require that the judgment debtor pay* such compensation and expenses of the employer, less said share of expenses and attorney's fees, so ascertained by the court out of the amount of the judgment, so far as sufficient, and the balance, if any, to the judgment creditor.

VA.CODE § 65.2–310 (emphasis added). In short, the statute envisions that a carrier will assert its claim in the lawsuit and request that the court order *the tortfeasor* to reimburse the carrier for benefits the carrier has paid. A "lien" is not automatically created simply by the Carrier's disbursal of benefits under its policy.[2]

Sections 65.2–309 and 65.2–310 of the Act do not use the word "lien" to define the carrier's right to assert a claim for "compensation paid and expenses." *See* VA.CODE §§ 65.2–309, –310. A "lien" is a property right; it is an encumbrance or charge on property that belongs to another. A party holding a "lien" against another's property has an automatic right or claim against that property. *See* BLACK'S LAW DICTIONARY 922 (6th ed.1990). A lien is a charge for the payment of an obligation that is independent of the lien. *See* 53 C.J.S. *Liens* § 1 (1948). Therefore, a lien confers no right of property upon the lien holder. *See* 12A MICHIE'S JURISPRUDENCE OF VIRGINIA AND WEST VIRGINIA § 2 (1989).

The fact that the term "lien" has a specific meaning and is not used in the Act is instructive. The leading treatise on statutory construction advises the courts to look to the plain and literal meaning of a statute where the statute is not ambiguous. *See* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46:01 (6th ed.2000) (stating that where the language of the statute is clear, court may not go outside statute to give it a different meaning; 3A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 73.02 (5th ed.1992)) (where statutory language is un-

2. The statute applicable to this case is distinguishable from statutes which explicitly state how and/or when a lien is created. *See, e.g.,* VA.CODE §§ 8.01–66.2, –66.5, –66.9 (stating by what actions a health care provider can create a lien against a third-party).

ambiguous, workers' compensation statutes to be given plain and literal meaning). In this case, the statute can be compared with other state statutes that clearly and unambiguously intend that an insurance carrier have a lien against third-party action recoveries in this context. *See, e.g.,* FLA.STAT.ANN. § 440.39(3)(a) (West 1991); 820 ILL.COMP.STAT. 30⅗(b) (West 1993); IOWA CODE ANN. § 85.22(1) (West 1996). The Florida workers' compensation statute provides:

> Upon suit being filed, the employer or the insurance carrier, as the case may be, may file in the suit a notice of payment of compensation and medical benefits to the employee or his or her dependents, *which notice shall constitute a lien upon any judgment or settlement* recovered to the extent that the court may determine to be their pro rata share for compensation and medical benefits paid or to be paid under the provisions of this law....

FLA.STAT.ANN. § 440.39(3)(a) (emphasis added). Similarly, the Iowa statute provides:

> If compensation is paid the employee or dependent or the trustee of such dependent under this chapter, the employer by whom the same was paid, or the employer's insurer which paid it, shall be indemnified out of the recovery of damages to the extent of the payment so made, ... *and shall have a lien on the claim for such recovery and the judgment thereon for the compensation for which the employer or insurer is liable.*[3]

IOWA CODE ANN. § 85.22(1) (emphasis added). The Illinois workers' compensation statute begins by obligating an employee to reimburse an insurance carrier out of any tort action recovery the amount in benefits the employee received. *See* 820 ILL.COMP.STAT. 30⅗(b). The Illinois statute then gives an employer or insurer the option to claim a lien, for added protection.

*See Scott v. Industrial Commission,* 184 Ill.2d 202, 234 Ill.Dec. 469, 703 N.E.2d 81, 88 (1998) (noting that the lien option is an additional means to protect the employer's right to reimbursement):

> If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer *may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated* from such third party.

820 ILL.COMP.STAT. 30⅗(b) (emphasis added). There is a marked difference between these statutes and the Virginia Workers' Compensation Act, which does not explicitly reference the creation of a "lien." Notwithstanding the absence of "lien" language, the Act still unambiguously sets forth the avenues through which an employer or insurer may obtain reimbursement for the funds it paid a worker for compensation benefits. Therefore, that which the Virginia Supreme Court said of statutes involved in two recent cases applies with equal force to the enactment involved here: "Nothing in this statute is inherently difficult to comprehend, of doubtful import, or lacking in clarity and definiteness. Accordingly, it is not necessary to look beyond the plain language of the statute to ascertain its underlying legislative intent." *Doss v. Jamco, Inc.,* 254 Va. 362, 492 S.E.2d 441, 446 (1997) (quoting *Harrison & Bates Inc. v. Featherstone Assoc.,* 253 Va. 364, 484 S.E.2d 883, 886 (1997)). It is the unambiguous language and meaning of the Workers' Compensation Act that must govern. *See* 3A SUTHERLAND STATUTORY CONSTRUCTION § 73.02.

■ Under the framework of the Act, Plaintiff Carrier did not and does not possess a statutory lien; the Carrier's rights

---

**3.** In order to continue and preserve the lien after its automatic creation, the employer or insurer must file notice of the lien within 30 days of notice of the employee's suit. *See* IOWA CODE ANN. § 85.22(1) (West 1996).

are more accurately characterized as a "claim." "A Claim is generally a liability in personam;" while "a lien is a liability in rem." 12A Michie's Jurisprudence § 2. The Act gave the Carrier the right to assert a claim in the third-party action, and afforded the Carrier a claim against the third-party tortfeasor for reimbursement, which could be asserted in a lawsuit.[4] However, the Carrier could only assert this latter claim if, *before any judgment or settlement,* the Carrier petitioned or moved the Court to calculate the amount to which the Carrier was entitled and to order the tortfeasor to pay the Carrier that amount. In this case, the Carrier never asserted its rights under either of the two options set forth in the Act. Because the statute does not impose any obligation on the Worker's attorney to act as legal representative for an insurance Carrier, the Carrier has no cause of action against the Worker's attorneys. Accordingly, no cause of action will lie against the Defendants Attorneys.

*Count I*

■ The Court grants the Attorneys' motions to dismiss the Carrier's conversion claim, because the Carrier does not sufficiently plead all of the elements of a cause of action for conversion. The elements of conversion are (1) the wrongful assumption or exercise of the right of ownership over goods or chattels, (2) that belong to another, (3) inconsistent with, or in denial of the owner's rights. *See Economopoulos v. Kolaitis,* 259 Va. 806, 528 S.E.2d 714, 718 (2000). Only a party that has a property interest in and is entitled to the immediate possession of an item can bring an action for conversion. *See id.* The Carrier asserts that the Attorneys wrongfully exer-

cised the right of ownership over the monetary recovery the Smoots received from the third-party action. The Carrier contends that it was entitled to the settlement monies. However, the Carrier's claim must fail because the Carrier was never entitled to the legal fees and costs paid to and retained by the Attorneys.

■ The Carrier has pled that the Smoots paid the Attorneys out of the settlement proceeds and reimbursed the Attorneys for legal expenses. (Compl.¶ 19.) An attorney is entitled to the fees and costs that he negotiates with his client. *See* Va.Code §§ 54.1–3932, 65.2–311. Furthermore, the Workers' Compensation Act requires insurers such as the Carrier to pay to attorneys a pro rata share of any monies the insurer is reimbursed from an employee. *See id.* § 54.1–3932; *see also Barbour v. Residential Elec., Inc.,* 1989 WL 647463, *2 (Virginia Workers' Compensation Commission 1989) (stating that an employer was entitled to recover the amount of its claim for reimbursement less attorney's fees and the employer's pro rata share of costs).[5] The Attorneys were entitled to these fees and expenses prior to satisfaction of any subrogation interest possessed by the Carrier. *See Barbour,* 1989 WL 647463, at *2. Therefore, the Attorneys never had goods or chattels that "belonged to" the Carrier. Moreover, because the Attorneys were entitled to the attorneys' fees and costs, the Carrier never had the right of immediate possession of the Attorneys' portion of the third-party action settlement. Thus, the Carrier has not pled a cause of action for conversion.

*Count IV*

■ The Court grants the Attorneys' motion to dismiss the Carrier's breach of

---

4. A claim is more comprehensive than a lien; it may embrace both a personal liability and a lien on property. *See* 12A Michie's Jurisprudence § 2. However, the language of the Workers' Compensation Act makes clear that any lien on property encompassed within the Carrier's "claim" would be against the property of the third-party tortfeasor. *See* Va.Code §§ 65.2–309, –310 (providing that the court

may require the judgment debtor to pay the employer's compensation and expenses).

5. The Commission refers to the employer's claim as a "lien," but no language in the Virginia Code states that a "lien" is created. *See* Va.Code §§ 65.2–309, –310, –311.

duty claim, because neither Virginia common law nor the Workers' Compensation Act supports the Carrier's contention that the Smoots' Attorneys owed a duty to the Carrier. In Count IV of the Complaint, the Carrier asserts that the Attorneys had a duty to protect the Carrier's claim against the settlement proceeds and ensure that the Carrier was reimbursed. The statute does not contain any language imposing any obligation upon a worker's attorney. Moreover, an attorney owes no duty to a non-client third party. *See Ayyildiz v. Kidd,* 220 Va. 1080, 266 S.E.2d 108, 112 (1980). Another jurisdiction has noted that only where an attorney expressly agrees with his client and a creditor that it will protect a lien against settlement proceeds does an attorney owe a duty to do so. *See Travelers Insurance Co. v. Haden,* 418 A.2d 1078, 1084 (D.C.1980). The Carrier has not pled that it had any agreement with the Attorneys in this case to represent its interests. In fact, it is not uncommon for the interests of an attorney's client and the workers' compensation carrier to be adverse to each other in third-party tort actions involving a claim for workers' compensation. The Workers' Compensation Act does not impose an attorney-client relationship on an attorney and a carrier where an express agreement for one does not exist. Moreover, the Virginia Workers' Compensation Commission has held in this case that it did not have jurisdiction to order the Attorneys to pay the Carrier reimbursement under the Act.

The Carrier cites *Barbour* for the proposition that an insurer is entitled to rely on an employee's counsel to recognize a lien and satisfy that lien out of any judgment. *See Barbour,* 1989 WL 647463, at *1–2. The Commission in *Barbour* concluded that an insurer's claim is enforceable before the Commission, regardless of whether the insurer has complied with the Act's requirement that an insurer petition or move the Court to recognize a lien on the third-party action recovery. *See id.* at *2. This holding is consistent with the Act,

because claims before the Commission differ from lawsuits before the Court. The Act refers to the rights of a workers' compensation carrier in a lawsuit to seek a court order allocating funds for reimbursement, as distinguished from a carrier's rights with regard to pending claims before the Commission for the termination of a worker's future benefits.

*Count V*

In Count V, the Carrier asserts that the Attorneys have breached the Virginia Workers' Compensation Act. The Court grants the Attorneys' motions to dismiss this claim. The Act does not articulate a cause of action for an attorney's failure to represent the workers' compensation carrier. This novel argument to create a new cause of action must be addressed to the General Assembly of Virginia or the Supreme Court of Virginia. Accordingly, the Court dismisses the Carrier's claim that the Attorneys violated the Workers' Compensation Act, because the language of the Act does not impose any civil liability on the Attorneys to protect the Carrier's subrogation interest. The Court is unwilling to infer a cause of action under the statute.

The Act provides that an employer's rights are subrogated to an employee's rights in a third-party action once an employer has satisfied an employee's claim for injury or death. *See* Va.Code § 65.2–309. The Act further provides that, upon petition of an employer or insurer, the Court may ascertain the amount of monies paid by the employer or insurer to the employee and require *the judgment debtor,* not the attorneys, to pay such compensation to the employer. *See id.* § 65.2–310. No action will lie against an attorney for breach of the statute.

*Count VI*

The Court holds that the Carrier has not pled a cause of action for conspiracy under sections 18.2–499 and 18.2–500 of the Code. To plead a cause of action for conspiracy, one must show that: (1) two or more persons combine, associate,

agree, or mutually undertake together, to (2) willfully and maliciously injure another in his reputation, trade, business, or profession. *See* VA.CODE §§ 18.2–499, –500 (1950). The Carrier has not shown that the Attorneys "willfully and maliciously" injured the Carrier in its business, as required under the Virginia Code. *See Peterson v. Cooley,* 142 F.3d 181, 188 (4th Cir. 1998). As set forth above, the Attorneys merely accepted and retained the amount in attorneys' fees and costs to which they were entitled. The Attorneys' actions as pled do not demonstrate intent or motivation to injure the Carrier in its reputation, trade, or business.

■ Moreover, as the attorneys for the Smoots, the Attorneys are the Smoots' agents. Generally, an agent cannot conspire with its principal. *See Fox v. Deese,* 234 Va. 412, 362 S.E.2d 699, 708 (1987). The Carrier attempts to counter this rule by citing *Anderson v. Canaday,* 37 Okla. 171, 131 P. 697, 700 (1913), and *Nicoleau v. Brookhaven Memorial Hospital Center,* 181 A.D.2d 815, 816, 581 N.Y.S.2d 382 (1992), for the proposition that an attorney can be liable to a third person if the attorney acts tortiously or maliciously, or acts upon illegal motives. Assuming *arguendo* that the cases apply, the Attorneys are not liable here, because they did not act illegally or maliciously in collecting their fees and costs. *See DuBrueler v. Hartford Fire Insurance Co.,* 4 Va. Cir. 135, 1983 WL 210333, *2 (1983) (stating that an attorney is not liable for conspiracy where the attorney has not performed a self-interested activity that went beyond the scope of the attorney's practice of law) (citing *Worldwide Marine Trading Corp. v. Marine Transport Service, Inc.,* 527 F.Supp. 581, 583 (E.D.Pa.1981)). The Court need not accept the Carrier's conclusory statement in the Complaint that the Attorneys acted willfully and maliciously. *See Volpone v. Caldera,* 190 F.R.D. 177, 180 (E.D.Va.1999) (finding that a Court need not accept unsupported, conclusory allegations).

Because an agent cannot conspire with his principal, and because the Carrier has not demonstrated that the Attorneys acted willfully and maliciously, or to injure the Carrier in its business, the Court grants the Attorneys' motions to dismiss the conspiracy claim.

*Count VII*

■ For similar reasons, the Court grants the motions to dismiss the Carrier's claim of tortious interference with contract. In addition to the rule against agent-principal conspiracy, *Fox v. Deese* states the rule that an agent cannot as a matter of law interfere with his principal's contract. 362 S.E.2d at 708. The Carrier attempts to get around this rule by noting that *Fox* was not a case involving an attorney agent and a client principal. However, *Fox* establishes a general principal-agent rule. Because the Attorneys were in a principal-agent relationship with the Worker, a claim of tortious interference with contract will not lie.

## IV. CONCLUSION

Pursuant to the foregoing analysis, the Court holds that (i) the Carrier's conversion claim should be dismissed because the Carrier has not pled facts demonstrating that the Attorneys wrongfully exercised control over goods or chattels to which the Carrier had a right of immediate possession; (ii) the Attorneys owed no duty at common law or under the Workers' Compensation Act to protect property to a non-client third party such as the Carrier; (iii) the Attorneys did not have a duty to pay the Carrier the amount of the workers' compensation benefits, or to protect the Carrier's subrogation right; (iv) the Attorneys are agents who could not conspire with their principals, their clients; and (v) the Attorneys are agents who could not interfere with their client's contract, because the client's contract is the attorney's own contract.

For these reasons, it is hereby

ORDERED, that the Defendants' motions to dismiss are GRANTED.

The Clerk is directed to forward a copy of this Order to counsel of record.